❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
information associated with
chairman@sheriffclarkeforsenate.com (the "account") that is
stored at premises owned, maintained, controlled, or operated
by Google, LLC.

)
)
)
)
)
)

Case No. 22-943M(NJ)

**Matter No.: 2021R00321**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   8/23/2022                    *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)* ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:   8/9/22 @ 12:28 p.m.               *Judge's signature*

City and state:   Milwaukee, Wisconsin               Hon. Nancy Joseph, U.S. Magistrate Judge
                                                        *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A
### Matter No. 2021R00321

### Property to Be Searched

This warrant applies to information associated with

chairman@sheriffclarkeforsenate.com (the "account") that is stored at premises

owned, maintained, controlled, or operated by Google LLC, a company

headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

**Attachment B**
**Matter No. 2021R00321**

**Particular Things to Be Seized**

I.   **Information to be disclosed by Google LLC (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any information that has been deleted but is still available to the provider or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government for each account or identifier listed in Attachment A the following information from January 1, 2017 to April 27, 2018, unless otherwise indicated:

- **SUBSCRIBER AND ACCESS RECORDS:** All business records and subscriber information, in any form kept, pertaining to the account, including: full name; physical address; telephone numbers, including SMS recovery and alternate sign-in numbers; alternative and recovery email addresses, including those provided during registration; usernames, screennames and other identifiers; account status; account creation date; account registration IP address; length of service; records of session times and durations, including log-in IP addresses; methods of connecting; log files; subscriber change history; means and source of payment (including any credit or bank account number); and detailed billing records;

- **DEVICES:** All device information associated with the accounts, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

- **SERVICES:** The types of services utilized, including connected applications and sites, and any dates associated with the commencement or termination of that use;

- **FORWARDING OR FETCHING ACCOUNTS:** All forwarding or fetching accounts relating to the accounts;

- **BROWSING, SEARCH, and APPLICATION USE HISTORY:** All Internet search, browsing history, and application usage history, such as Web & App Activity, including: search terms; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; all text typed into the Google Chrome address bar or Google search bar, including URLs and IP addresses; all URLs or IP addresses clicked on; user settings; and all associated logs and change history;

- **LOCATION HISTORY:** All records indicating the location at which the account was active, such as Location History and Web & App Activity, including: GPS data; cell site/cell tower information; IP addresses; information associated with each location record, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, and inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car); and associated logs and user settings, including Timeline access logs and change history;

- **GMAIL:** The contents of all emails associated with the account, including, but not limited to: stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the date and time at which each email was sent; the size and length of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

- **CONTACTS:** Any records pertaining to the user's contacts, including: address books; contact lists, including autocomplete suggestions; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history;

- **CALENDAR:** Any records pertaining to the user's calendar, including: Google Calendar entries; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history;

- **WEB-BASED CHATS:** The contents of all chats associated with the account, including Google Hangouts, Meet, and Chat, in any format (text, audio, or video) including, but not limited to: stored, deleted, and draft chat communications, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the

size and length of each communication; user settings; and all associated logs, including access logs and change history;

- **GOOGLE DRIVE**: The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes, lists, applications, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

- **GOOGLE PHOTOS**: The contents of all media associated with the account in Google Photos or Picasa, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; third-party data; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs, including access logs and IP addresses, of each record;

- **GOOGLE MAPS and TRIPS**: All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; information associated with locations and other data associated with My Maps and Location Sharing; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

- **GOOGLE PLAY STORE**: All activity relating to Google Play, including: downloaded, installed, purchased, used, and deleted applications, movies, music, television shows, books, magazines, games, and other files; details of the associated device and Android ID for each application, medium, or file; payment transactions; user settings; and all associated logs, including IP addresses, location data, timestamps, and change history;

- **MOBILE MESSAGING**: The contents of all messages associated with the account, including Google Duo, Android Messages, and Google Allo, in any

format (e.g. SMS, MMS, or RCS) including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses and telephone numbers; the size and length of each communication; associated telephone numbers, including SMS recovery numbers; usernames and other identifiers; user settings; and all associated logs and change history;

- **YOUTUBE CONTENTS:** The contents of all media associated with the account on YouTube, whether active, deleted, or in draft, including: copies of videos and other media only if uploaded to, saved to, shared by or shared with the account; edits, comments, likes, chats, and other interactions, including associated URLs; search history; channels; subscriptions; subscribers, friends, and other contacts; playlists; connected applications; associated URLs for each record; creation and change history; privacy settings for each record; and all associated logs, including IP addresses, locations, timestamps, and device identifiers;

- **YOUTUBE WATCH HISTORY:** A record of the account's watch history, including: accessed URLs and their associated duration, privacy settings, upload timestamps, tags, IP addresses, change history, location information, and uploading account or identifier; the logs for each access by the account, including IP address, location, timestamp, and device identifier; and change history;

- **YOUTUBE SUBSCRIBER RECORDS:** All business and subscriber records associated with the account on YouTube, including birthday; name; username and other identifiers; linked accounts; alternate or recovery emails; telephone numbers, including SMS recovery numbers; physical addresses; account status; account creation date; account registration IP address; length of service; means and source of payment (including any credit or bank account number); associated devices; associated Android IDs; and associated logs and change history;

- **ADWORDS/GOOGLE ADS:** All records for advertising transactions by the account relating to Google Ads, AdWords, and DoubleClick for Advertisers, including: bid, location of advertisement (including URL), permitted advertisements, blocked advertisements, design and customization settings, and engagement records; payment transactions; user settings; and all associated logs, including IP addresses, location data, timestamps, and change history;

- **ADVERTISING SUBSCRIBER RECORDS:** All business and subscriber records associated with the account on AdSense, Google Ads, Adwords, and DoubleClick by Google, including: name; user name; physical address; alternate or recovery emails; telephone numbers, including SMS recovery numbers; linked accounts; account status; account creation date; account registration IP address; length of service; associated devices; associated AndroidIDs; means and source of payment (including any credit or bank account number); and all associated logs and change history;

- **LINKED NON-GOOGLE ACCOUNTS:** All records relating to connected applications and websites not controlled by Google, including: applications and websites connected to the account at any time; associated account identifiers; privacy settings and account access permissions; and all associated logs, including access logs using Google credentials, timestamps, IP addresses, and change history;

The Provider is hereby ordered to disclose the above information to the Government within 28 days of the issuance of this warrant.

II.    **Information to be seized by the government**

All information described above in Section I that constitutes evidence and/or instrumentalities of violations of 18 U.S.C. § 1001 (false statements within the jurisdiction of a federal agency); 18 U.S.C. § 1519 (making false records with intent to impede, obstruct or influence the proper administration of any matter within the jurisdiction of a federal agency); and 18 U.S.C. § 1343 (wire fraud), since January 1, 2017, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Sheriff David Clarke (including but not limited to communications with Sheriff David Clarke and his representatives, counsel, or proxies);

b.    The Sheriff David Clark for U.S. Senate (Official Draft Campaign) Super PAC;

c.    The rules and regulations promulgated by the Federal Election Commission;

d.    The rules and standards imposed by the Federal Election Campaign Act; and

e.    The finances—including but not limited to expenditures, obligations, and income—of Jack W. Daly and Nathanael K. Pendley;

f.    The identity of the person(s) who created or used the account; including records that help reveal the whereabouts of such person(s);

g.    Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

h.　　Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

i.　　Evidence indicating the subscriber's state of mind as it relates to

22-M(NJ)

the crimes under investigation, including interests and motivations; and

j.　　Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

### for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 22-943M(NJ) |
| information associated with chairman@sheriffclarkeforsenate.com (the "account") that is stored at premises owned, maintained, controlled, or operated by Google, LLC. | ) ) ) | **Matter No.: 2021R00321** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1001, 1343 and 1519 | False statements within the jurisdiction of a federal agency; making false records with intent to impede, obstruct or influence the proper administration of any matter within the jurisdiction of a federal agency; and wire fraud. |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Eric Burns, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 8/9/2022

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. Nancy Joseph, U.S. Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN

# APPLICATION FOR A SEARCH WARRANT

## Matter No. 2021R00321

I, Eric Burns, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(I)(A) to require Google LLC (hereafter "Google") to disclose to the government records and other information, including the contents of communications, associated with the Google account associated with the email address chairman@sheriffclarkeforsenate.com, that is stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The information to be disclosed by Google and searched by the government is described in the following paragraphs and in Attachments A and B.

2.      I have been a Special Agent with the FBI since November 2009. I am currently assigned to an FBI squad which investigates financial crimes, civil rights crimes, and public corruption crimes. During my tenure with the FBI, I have participated investigations involving campaign finance crimes, to include fraudulent political action committees. I have participated in all aspects of investigations including executing search warrants involving, among other things, the search and seizure of computers, computer equipment, software, and electronically stored information.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence of violations of 18 U.S.C. §§ 1001, 1343, and 1519, as described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(I)(A), & (c)(I)(A). Specifically, the Court is "a district court of the United States ... that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND ON THE FEDERAL ELECTION COMMISSION (FEC) AND POLITICAL ACTION COMMITTEES (PACS)

6.     The Federal Election Commission (FEC) is the independent regulatory agency charged with administering and enforcing the federal campaign finance law. The FEC has jurisdiction over the financing of campaigns for the U.S House, Senate, Presidency and Vice Presidency. Federal campaign finance law covers three broad subjects: (1) Public disclosure of funds raised and spent to influence federal elections, (2) Restrictions on contributions and expenditures made to influence federal elections, and (3) The public financing of presidential campaigns.

7.     Once an individual decides to campaign or become a candidate, the individual must register with the FEC as a candidate, designate and register a principal campaign committee, and begin to file reports with the FEC.

8.     The term "committee" encompasses several different political groups that receive and spend money in federal elections. A political committee is an entity that meets one of the following conditions: (1) An authorized committee of a candidate; (2) Any club, association or other group of persons that receives contributions or makes expenditures, either of which aggregate over $1,000 during a calendar year; (3) A local unit of a political party (except a state party committee) that: (a) receives contributions aggregating over $5,000 during a calendar year; (b) makes contributions or expenditures either of which aggregate over $1,000 during a calendar year or (c) makes payments aggregating over $5,000 during a calendar year for certain activities that are exempt from the definitions of contribution and expenditure; or (4) Any separate segregated fund upon its establishment.

9.     A Political Action Committee (PAC) is a popular term for a political committee that is neither a party committee nor an authorized committee of a candidate. PACs directly or indirectly established, administered, or financially supported by a corporation or labor organization are called separate segregated funds (SSFs). PACs without such a corporate or labor sponsor are called nonconnected PACs.

10.     A nonconnected committee is any committee that conducts activities in connection with an election, but that is not a party committee, an authorized

committee for any candidate for federal election, or an SSF. The name of a nonconnected committee may not include the name of any candidate for federal office and may not use a candidate's name in any name under which the committee makes solicitations or other communications to the general public, unless the name clearly shows opposition to the candidate. The one exception to this rule is the name of a "draft committee." A draft committee is a political committee that is established solely to draft an individual or to encourage him or her to become a candidate for federal office. A draft committee may use the name of an individual in its official name, but only if the committee name clearly indicates that it is a draft committee.

11. The type of nonconnected PAC one forms depends on what he or she wants to do: make contributions to federal candidates, donate funds to state and local candidates, and/or make independent expenditures to support or oppose federal candidates.

12. Independent expenditure-only political committees, or "Super PACs," are committees that may receive unlimited contributions from individuals, corporations, labor unions and other PACs for the purpose of financing independent expenditures and other independent political activity.

13. The Federal Election Campaign Act ("the Act") requires political committees to register with the FEC. According to the FEC, a nonconnected committee becomes a political committee once its contributions or expenditures exceed $1,000 in a calendar year. Additionally, nonconnected committees, as is the

case with all political committees required to register with FEC, are subject to certain reporting requirements.

14.     Amongst the many FEC reporting requirements, nonconnected committees are required to itemize receipts and disbursements when they meet certain criteria. With respect to disbursements, nonconnected committees must itemize, regardless of amount, when the disbursement meets any one of the following criteria: (1) Contributions to candidates and political committees; (2) Expenditures for allocated federal/nonfederal activity; (3) Loan repayments; (4) Loans made by the committee; and (5) Transfers to affiliated committees. A disbursement that does not fall under of the aforementioned categories must be itemized if it exceeds $200 when aggregated with other disbursements made to the same payee during the calendar year.

## PROBABLE CAUSE

15.     The FBI is investigating allegations of a scheme organized by two or more individuals for making false representations to the FEC, misleading campaign contributors, and misappropriating contributions from the Sheriff David Clarke[1] for U.S. Senate (Official Draft Campaign) Super PAC (the "Draft Sheriff Clarke PAC").

16.     On January 19, 2017, JACK DALY, a licensed attorney currently residing in North Carolina, registered the Draft Sheriff Clarke PAC by filing FEC Form 1, Statement of Organization, with the FEC. According to information provided by DALY on FEC Form 1, as well as information regarding the committee on the

---

[1] DAVID CLARKE is the former Sheriff of Milwaukee County and served in that role from March 2002 to August 2017.

FEC's website, the Draft Sheriff Clarke PAC was formed as a nonconnected Super PAC (Independent Expenditure-Only).

17.    According to FEC Form 1 filed by DALY for the Draft Sheriff Clarke PAC, DALY listed himself as the Chairman, Treasurer, and Custodian of Records of the PAC. Furthermore, DALY listed email addresses jackwdaly@gmail.com and jackwdaly@me.com as the PAC's email addresses and provided telephone number 703-200-6057 as his telephone number.

18.    According to the FEC, the treasurer is responsible for filing complete and accurate reports and statements on time, signing all reports and statements, depositing receipts in the committee's designated bank within 10 days of receipt, authorizing expenditures or appointing an agent (either orally or in writing) to authorize expenditures, monitoring contributions to ensure compliance with the Act's limits and prohibitions, and keeping the required records of receipts and disbursements.

19.    On January 19, 2017, the same day DALY registered the Draft Sheriff Clarke PAC with the FEC, a Wisconsin-based television station published an article on its website regarding the Draft Sheriff Clarke PAC. The article made several references to one of the Draft Sheriff Clarke PAC's advisory board members, NATHANAEL PENDLEY, who is also a North Carolina-based attorney. PENDLEY told the Wisconsin-based television station that the Draft Sheriff Clarke PAC already had thousands of signatures, and that PENDLEY had approached CLARKE about the U.S. Senate bid a few months prior.

20.     A review of open-source database information indicates DALY and PENDLEY have historical connections and have been involved in questionable political endeavors since at least 2000. For example, in February 2000, DALY and PENDLEY recruited a homeless man to run against an incumbent North Carolina state auditor who had the same last name in order to cause confusion on the Democratic primary ballot.

21.     In addition to having historical connections to DALY and being on the advisory board for the Draft Sheriff Clarke PAC, PENDLEY also received monies from the Draft Sheriff Clarke PAC that were disguised as payments to a digital design and hosting company located in North Carolina, as further described in paragraph 42 below.

22.     A further review of open-source database information indicates DALY also has a history of financial issues. Between September 2011 and September 2014, DALY filed for Chapter 13 bankruptcy three times and Charter 7 bankruptcy one time. Further, in or about November 2014, DALY had his residence in Virginia, where he appeared to be living at the time, foreclosed upon.

23.     On November 18, 2016, according to information received by subpoena from Wells Fargo on December 30, 2021, DALY opened a business checking account, account number ending in x7576, in the name of Sheriff David Clark for US Senate Draft Committee d/b/a Draft Sheriff Clark (the "x7576 PAC Account"). DALY listed himself as the "Key Executive with Control of the Entity" and described the business

as an FEC registered candidate draft committee. DALY was the sole signatory on the account.

24.     On February 1, 2017, according to information received by subpoena from Wells Fargo on December 30, 2021, DALY opened another business checking account, account number ending in x8501, in the name of Sheriff David Clark for US Senate Draft Committee d/b/a Draft Sheriff Clark (the "x8501 PAC Account"). DALY listed himself as the "Key Executive with Control of the Entity" and described the business as an FEC registered candidate draft committee. DALY was the sole signatory on the account.

25.     According to information received by subpoena from Wells Fargo on December 30, 2021, DALY has maintained a personal joint checking account with his spouse since September 2011, account number ending in x1873 (the "x1873 Personal Account"). DALY and his spouse are co-signatories on the account.

26.     According to information received by subpoena from Woodforest National Bank on April 12, 2022, PENDLEY has maintained a personal joint checking account with his spouse since January 2008, account number ending in x6172 (the "x6172 Personal Account"). PENDLEY and his spouse are co-signatories on the account.

27.     Beginning in January 2017, DALY sent fundraising emails to prospective donors from an account believed to be created, maintained, and controlled by DALY, chairman@sheriffclarkeforsenate.com. In one such fundraising email, DALY identified himself as the National Chairman for the Draft Sheriff Clarke PAC.

The email stated, in part, "David is willing to run: he just has to know that he has enough national support…" The email was signed, "For the Rule of Law, Jack W. Daly, Esq."

28.     According to information received by subpoena from Google on February 23, 2022, Google account 30554225093 is registered to email address chairman@sheriffclarkeforsenate.com (the "Account") and is subscribed to a "Jack Daly" with recovery email address jackwdaly@gmail.com and recovery telephone number 703-200-6057. The Account was created on January 4, 2017, and the Account was last logged into on April 26, 2018. According to information provided by Google, the Account uses the following Google services: Dasher Policy, Google Developers Console, Google Services, Google Apps Administrator Control Panel, Google Subscribed Links, Gmail, Ga Plus, Developer Consoles, Google Search Console, Google Hangouts, Google Calendar, Google Drive, Google Sites, Contacts, Google Groups, Pikeplace User, Google Voice, Google Ads, YouTube, Google Chrome Sync, Classroom, Google Tasks Service, Google Docs, Apps Script, Google Keep, Jamboard Web and Mobile Apps, Topaz, Dynamite, Google Vault, Meet, Course Kit.

29.     According to information received by court order from Google on November 5, 2021 and April 11, 2022, between January 16, 2017 and September 8, 2017, the Account exchanged at least 455 emails with DALY and at least 25 emails with PENDLEY.

30.     According to information filed with the FEC, DALY reported the Draft Sheriff Clarke PAC had $2,326,072 in contributions for the 2017 to 2018 time period,

which included contributions from individuals located in the Eastern District of Wisconsin.

      a.  For example, on February 20, 2017, the Draft Sheriff Clarke PAC received a $250 contribution from an individual residing in Neenah, Wisconsin. In total, DALY reported $25,997 in contributions to the Draft Sheriff Clarke PAC from individuals residing in Wisconsin.

31.    According to information received by court order from Google on April 11, 2022, the Account exchanged emails with donors, to include donors residing in the Eastern District of Wisconsin.

      a.  For example, on February 20, 2017, the Account received an email from the individual residing in Neenah, Wisconsin that contributed $250 to the Draft Sheriff Clarke PAC on February 20, 2017, as noted in paragraph 30 above. On March 4, 2017, the Account received another email from the individual residing in Neenah, Wisconsin. On March 5, 2017, the Account sent an email to the individual residing in Neenah, Wisconsin.

32.    On May 23, 2017, a Washington DC-based news website published an article alleging the Draft Sheriff Clarke PAC was one of several PACs soliciting donations for candidates that were not running for office. The article made reference to a book CLARKE published in February 2017 wherein CLARKE stated, "I have no interest in running for elected office other than being sheriff. I'm not running for mayor, I'm not running for congressman, I'm not running for senator, and I'm not

running for governor." The website interviewed DALY for its article, and DALY stated he would be "disappointed" if CLARKE did not run for U.S. Senate. During the interview, DALY claimed more than 100,000 people had signed the PAC's "pledge" supporting CLARKE's candidacy and that 20,000 donors had already given to the Draft Sheriff Clarke PAC. DALY further claimed that he was operating the PAC as "an affair of the heart, not of the pocketbook," and went on to tell the website, "I have taken not one red cent since the first dollar came in, notwithstanding the fact that my service as its primary administrator would justify the kind of hefty salaries many PAC administrators get."

   a. According to information filed with the FEC, DALY reported the Draft Sheriff Clarke PAC had approximately 1,300 donors, in total, between January 2017 and December 2017.

33. On or about July 21, 2017, CLARKE was interviewed by a radio show host where he stated he was not running for U.S. Senate and that the Draft Sheriff Clarke PAC was a scam. During the interview, CLARKE stated, "Every time I turn around, I talk to people and say, 'No, I'm not running for Senate, hang onto your money'." CLARKE was asked specifically about the Draft Sheriff Clarke PAC, to which he stated, "It's a scam PAC really." Despite the public denouncement, DALY continued to solicit donations for the Draft Sheriff Clarke PAC.

   a. Between July 21, 2017 and December 2, 2017, FEC contribution reports revealed the Draft Sheriff Clarke PAC received approximately $60,000

in donations, including from individuals located in the Eastern District of Wisconsin.

       i.   For example, on August 15, 2017, the Draft Sheriff Clarke PAC received a $500 donation from an individual residing in Kenosha, Wisconsin.

34.    On July 22, 2017, according to information obtained via search warrant from Apple on April 22, 2022, DALY logged into the Account by visiting the url https://accounts.google.com/ServiceLogin/identifier and utilizing the Username chairman@sheriffclarkeforsenate.com.

35.    According to information received by court order from Google on April 11, 2022, the Account continued to send and receive emails after CLARKE publicly denounced the Draft Sheriff Clarke PAC as a scam.

       a.   Between July 21, 2017 and September 8, 2017, the Account sent at least 81 emails and received over 1,500 emails.

36.    On September 2, 2017, at approximately 1:59 PM CST, according to information received by search warrant from Google on April 19, 2022, DALY received a forwarded email from CLARKE with the subject line, "Jack Daly is at it again − he's collecting contributions". The email CLARKE forwarded to DALY contained a link to donate to the Draft Sheriff Clarke PAC. CLARKE's email to DALY stated, "Jack what is this? You are well aware that I am NOT running for US Senate. I announced that a month ago and you were contacted by a local newspaper writer

about my announcement that I was NOT running. Do NOT raise anymore money using my name."

    a.    DALY responded less than an hour later, at approximately 2:48 PM CST, stating, in part, that he "stopped putting my money into the draft pac" when CLARKE publicly denounced the Draft Sheriff Clarke PAC on July 21, 2017. DALY further stated, in part, "I stepped back as the pac's Treasurer" and "assumed the new crew would be more or less winding things down." DALY further stated, in part, that he "had personal connections with the new Treasurer" and would "see what I can do."

37.    On September 2, 2017, between 3:19 and 3:22 PM CST, according to information received by search warrant from Google on April 19, 2022, DALY performed the following searches utilizing his Google account: "fec treasurer ten days" and "fec appointment of new treasurer". Furthermore, at 3:22 PM CST, DALY visited a webpage on the FEC's website titled, "Appointing a treasurer."

38.    On September 7, 2017, at approximately 5:52 PM CST, according to information filed with the FEC, an amended FEC Form 1 was electronically filed with the FEC for the Draft Sheriff Clarke PAC to change the PAC's Treasurer and Custodian of Records from DALY to an individual named RYAN ZYNKA[2]. The PAC's

---

[2] Based on information gathered during the course of this investigation, I believe the individual who purportedly replaced DALY as the Custodian of Records and Treasurer is Ryan Zynda, not Zynka. Indeed, according to information filed with the FEC for the Draft Sheriff Clarke PAC, on October 26, 2017, a second amended FEC Form 1 was filed to correct Zynka to Zynda and to correct the email address from RyanZynka@gmail.com to RyanZynda@gmail.com.

mailing address and email address were also changed to 2020 Armstrong Mill Road #605, Lexington, KY 40515 and ryanzynka@gmail.com[2], respectively.

39. On September 7, 2017, at approximately 2:45 PM CST, and approximately three hours before the amended FEC Form 1 was electronically filed with the FEC for the Draft Sheriff Clarke PAC, according to information obtained by subpoena from Google on March 1, 2022, Google account RyanZynda@gmail.com was created. The RyanZynda@gmail.com account listed a recovery email address and telephone number of pendleynate@aol.com and 336-918-1994, an email address and telephone number believed to be utilized by PENDLEY. The Account was last logged into on December 5, 2019 at approximately 3:44 PM CST.

40. On September 7, 2017, between approximately 7:30 PM CST and 7:32 PM CST, less than two hours after the amended FEC Form 1 was electronically filed with the FEC for the Draft Sheriff Clarke PAC, according to information received by court order from Google on April 11, 2022, the Account sent three emails to DALY. Based on a review of the information received from Google, this was the last three emails the Account sent.

41. On September 10, 2017, according to information obtained via search warrant from Apple on April 22, 2022, DALY logged into the RyanZynda@gmail.com account by visiting url https://accounts.google.com/ServiceLogin/identifier and utilizing the Username "ryanzynda@gmail.com." DALY last logged into the aforementioned url with username ryanzynda@gmail.com on December 5, 2019 at

approximately 3:44PM CST, the same date and time as the last login to the Account, as indicated in paragraph 39 above.

42.     As indicated in paragraph 21 above, PENDLEY received monies directly from the Draft Sheriff Clarke PAC that were disguised as payments to a digital design and hosting company located in North Carolina.

   a.  Based on a review of the 2017-2018 Draft Sheriff Clarke PAC's receipts and disbursements reports filed with the FEC, between January 25, 2017 and September 18, 2017, the Draft Sheriff Clarke PAC purportedly paid $68,972.65 to an entity called Raven Creative. There were five separate disbursements to Raven Creative disclosed to the FEC by the Draft Sheriff Clarke PAC, and the purpose of the disbursements, according to the itemized disbursement reports for the disbursements to Raven Creative that were filed with the FEC by the Draft Sheriff Clarke PAC, were for "Ad production for website, radio and television," "Copywriting and editing for website, digital and print media," and "Copywriting and Editing Services."

   b.  A review of the x7576 PAC Account and x8501 PAC Account revealed $68,972.65 was paid to PENDLEY, once by check and four times by wire, on the same dates and for the same amounts as the five separate disbursements disclosed to the FEC as disbursements to Raven Creative.

i. A review of the x6172 Personal Account revealed the four wire transactions from the x7576 PAC Account and x8501 PAC Account were deposited in the x6172 Personal Account.

ii. A review of the x7576 PAC Account revealed the check, dated January 24, 2017, was cashed.

c. A further review of the itemized disbursement reports for the disbursements to Raven Creative that were filed with the FEC by the Draft Sheriff Clarke PAC revealed two different addresses for Raven Creative.

i. The first three itemized disbursement reports, dated January 25, 2017, April 10, 2017, and May 11, 2017, list a mailing address of 1257 Marsolan Ct., Henderson, NV for Raven Creative.

1. A review of law enforcement database information revealed that 1257 Marsolan Ct.. Henderson, NV is a townhouse where one of PENDLEY's daughters resided in 2017.

ii. A review of the final two itemized disbursement reports, dated July 7, 2017 and September 18, 2017, list a mailing address of 306 Lake Manor Rd., Chapel Hill, NC for Raven Creative.

1. A review of open source information revealed 306 Lake Manor Rd., Chapel Hill, NC is the address for an entity called Raven Creative, Inc. According to its website, Raven

Creative, Inc. is a digital design and hosting company incorporated in North Carolina.

d. Based on open source research, I was unable to identify any apparent relationship or connection between Raven Creative, Inc. and the Draft Sheriff Clarke PAC, DALY, PENDLEY, or PENDLEY's daughter.

43. Like PENDLEY, DALY also received monies directly from the Sheriff David Clarke PAC that were not disclosed to the FEC. Additionally, and in contrast to DALY's history of financial issues, since establishing the Draft Sheriff Clarke PAC, DALY has purchased numerous assets using, at least in part, the monies he received directly from the Draft Sheriff Clarke PAC.

a. A review of the x7576 PAC Account revealed that on August 17, 2017 and August 22, 2017, DALY transferred $20,000 and $5,000, respectively, to the x1873 Personal Account. Based on a review of the 2017-2018 Draft Sheriff Clarke PAC's receipts and disbursements reports filed with the FEC, DALY did not disclose the $20,000 and $5,000 he received from x7576 PAC Account.

b. A review of the x8501 PAC Account revealed that on May 18, 2018, DALY transferred $50,000 to the x1873 Personal Account. Based on a review of the 2017-2018 Draft Sheriff Clarke PAC's receipts and disbursements reports filed with the FEC, DALY nor ZNYDA disclosed the $50,000 he received from x8501 PAC Account[3].

---

[3] It should be noted that DALY wrote a check for $50,000, dated July 3, 2017, from the x1873 Personal Account that was subsequently deposited into the x8501 PAC Account on January 23, 2018.

c. According to an open source database search, in June 2018, DALY and his spouse purchased a residence in North Carolina for $1.45 million. The residence was financed with a $1.15 million loan. A review of the x1873 Personal Account revealed that on June 19, 2018, DALY sent approximately $270,000, via wire transfer, to a North Carolina-based law firm whose practice areas include residential property closing.

## BACKGROUND CONCERING GOOGLE[4]

44. Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, and other services. Many of these free services offer additional functionality if the user signs into their Google Account.

45. In addition, Google offers an operating system for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to

---

In reviewing the 2017-2018 Draft Sheriff Clark PAC receipts reports filed with the FEC, DALY reported $50,000 as a contribution to the Draft Sheriff Clarke PAC on July 3, 2017.

[4] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; and product pages on about.google.com.

a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

46. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

47. **GMAIL:** Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

48. **CONTACTS:** Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Google Contacts can store up to 25,000 contacts. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their Android mobile phone or device address book with their

account so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them.

49.     **CALENDAR:** Google provides an appointment book for Google Accounts through Google Calendar, which can be accessed through a browser or mobile application. Users can create events or RSVP to events created by others in Google Calendar. Google Calendar can be set to generate reminder emails or alarms about events or tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars. An entire calendar can be shared with other Google Accounts by the user or made public so anyone can access it. Users have the option to sync their mobile phone or device calendar so it is stored in Google Calendar. Google preserves appointments indefinitely, unless the user deletes them.

50.     **WEB-BASED CHATS and MOBILE MESSAGING:** Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention.

51.     **GOOGLE DRIVE and GOOGLE KEEP:** Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs

(Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them. Google Keep is a cloud-based notetaking service that lets users take notes and share them with other Google users to view, edit, or comment. Google Keep notes are stored indefinitely, unless the user deletes them.

52. **GOOGLE PHOTOS:** Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

53. **GOOGLE MAPS:** Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by- turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

54. **GOOGLE PAY:** A subsidiary of Google, Google Payment Corporation, provides Google Accounts an online payment service called Google Pay (previously Google Wallet), which stores credit cards, bank accounts, and gift cards for users and allows them to send or receive payments for both online and brick-and- mortar purchases, including any purchases of Google services. Users may delete some data associated with Google Pay transactions from their profile but Google Payment Corporation retains some records for regulatory purposes.

55. **GOOGLE CHROME and MY ACTIVITY:** Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on

Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account.

56.     **GOOGLE PLAY:** Google Accounts can buy electronic media, like books, movies, and music, and mobile applications from the Google Play Store. Google Play records can include records of whether a particular application has been or is currently installed on a device. Users cannot delete records of Google Play transactions without deleting their entire Google Account.

57.     **GOOGLE VOICE:** Google offers a service called Google Voice through which a Google Account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely, unless the user deletes them.

58.     **YOUTUBE:** Google also offers a video platform called YouTube that offers Google Accounts the ability to upload videos and share them with others. Users can create a YouTube channel where they can upload videos, leave comments, and create playlists available to the public. Users can subscribe to the YouTube channels of others, search for videos, save favorite videos, like videos, share videos with others, and save videos to watch later. More than one user can share control of a YouTube channel. YouTube may keep track of a user's searches, likes, comments, and change history to posted videos. YouTube also may keep limited records of the IP addresses used to access particular videos posted on the service. Users can also opt into a setting

to track their YouTube Watch History. For accounts created before June 2020, YouTube Watch History is stored indefinitely, unless the user manually deletes it or sets it to auto-delete after three or eighteen months. For accounts created after June 2020, YouTube Watch History is stored for three years, unless the user manually deletes it or sets it to auto-delete after three or eighteen months.

59. **INTEGRATION OF GOOGLE SERVICES:** Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

60. **SUBSCRIBER RECORDS:** When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender.

If a user is paying for services, the user must also provide a physical address and means and source of payment.

61.     **ACCESS REORDS:** Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

62.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

63.     **BROWSING, SEARCH, and APPLICATION USE HISTORY:** Google collects and retains data about searches that users conduct within their own Google Account or using the Google Search service while logged into their Google Account,

including voice queries made to the Google artificial intelligence-powered virtual assistant Google Assistant or commands made to Google Home products. Google also has the capacity to track the websites visited using its Google Chrome web browser service, applications used by Android users, ads clicked, and the use of Google applications by iPhone users. According to Google, this search, browsing, and application use history may be associated with a Google Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google Assistant and Google Home voice queries and commands may also be associated with the account if certain global settings are enabled, such as Voice & Audio Activity tracking. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes them or opts in to automatic deletion of their location history every three or eighteen months. Accounts created after June 2020 auto-delete Web & App Activity after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

64. **LOCATION HISTORY:** Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when

Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

65. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. This can be true even if subscribers insert false information to conceal their identity; this information often nevertheless provides clues to their identity, location or illicit activities.

66.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

67.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

68.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt

(e.g., deleting account information in an effort to conceal evidence from law enforcement).

69.     Other information connected to the use of a Google account may lead to the discovery of additional evidence.  For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

70.     Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users, their location(s) and activities at certain times relevant to the offenses at issue, the identities of their accomplices and co-conspirators, communications with those accomplices and co-conspirators, and actions taken and research performed relating to the criminal offenses at issue.

71.     On March 3, 2022, a preservation request under 18 U.S.C. § 2703(f) was sent to Google regarding Google accounts registered under email address chairman@sheriffclarkeforsenate.com.

## CONCLUSION

72.     Based on the forgoing, I request that the Court issue the proposed search warrant.

73.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google LLC. Because the warrant will be served on Google LLC, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A
Matter No. 2021R00321

## Property to Be Searched

This warrant applies to information associated with

chairman@sheriffclarkeforsenate.com (the "account") that is stored at premises

owned, maintained, controlled, or operated by Google LLC, a company

headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

**Attachment B**
**Matter No. 2021R00321**

**Particular Things to Be Seized**

I.   **Information to be disclosed by Google LLC (the "Provider")**

　　To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any information that has been deleted but is still available to the provider or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government for each account or identifier listed in Attachment A the following information from January 1, 2017 to April 27, 2018, unless otherwise indicated:

- **SUBSCRIBER AND ACCESS RECORDS:** All business records and subscriber information, in any form kept, pertaining to the account, including: full name; physical address; telephone numbers, including SMS recovery and alternate sign-in numbers; alternative and recovery email addresses, including those provided during registration; usernames, screennames and other identifiers; account status; account creation date; account registration IP address; length of service; records of session times and durations, including log-in IP addresses; methods of connecting; log files; subscriber change history; means and source of payment (including any credit or bank account number); and detailed billing records;

- **DEVICES:** All device information associated with the accounts, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

- **SERVICES:** The types of services utilized, including connected applications and sites, and any dates associated with the commencement or termination of that use;

- **FORWARDING OR FETCHING ACCOUNTS:** All forwarding or fetching accounts relating to the accounts;

- **BROWSING, SEARCH, and APPLICATION USE HISTORY:** All Internet search, browsing history, and application usage history, such as Web & App Activity, including: search terms; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; all text typed into the Google Chrome address bar or Google search bar, including URLs and IP addresses; all URLs or IP addresses clicked on; user settings; and all associated logs and change history;

- **LOCATION HISTORY:** All records indicating the location at which the account was active, such as Location History and Web & App Activity, including: GPS data; cell site/cell tower information; IP addresses; information associated with each location record, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, and inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car); and associated logs and user settings, including Timeline access logs and change history;

- **GMAIL:** The contents of all emails associated with the account, including, but not limited to: stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the date and time at which each email was sent; the size and length of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

- **CONTACTS:** Any records pertaining to the user's contacts, including: address books; contact lists, including autocomplete suggestions; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history;

- **CALENDAR:** Any records pertaining to the user's calendar, including: Google Calendar entries; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history;

- **WEB-BASED CHATS:** The contents of all chats associated with the account, including Google Hangouts, Meet, and Chat, in any format (text, audio, or video) including, but not limited to: stored, deleted, and draft chat communications, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the

size and length of each communication; user settings; and all associated logs, including access logs and change history;

- **GOOGLE DRIVE**: The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes, lists, applications, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

- **GOOGLE PHOTOS**: The contents of all media associated with the account in Google Photos or Picasa, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; third-party data; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs, including access logs and IP addresses, of each record;

- **GOOGLE MAPS and TRIPS**: All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; information associated with locations and other data associated with My Maps and Location Sharing; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

- **GOOGLE PLAY STORE:** All activity relating to Google Play, including: downloaded, installed, purchased, used, and deleted applications, movies, music, television shows, books, magazines, games, and other files; details of the associated device and Android ID for each application, medium, or file; payment transactions; user settings; and all associated logs, including IP addresses, location data, timestamps, and change history;

- **MOBILE MESSAGING:** The contents of all messages associated with the account, including Google Duo, Android Messages, and Google Allo, in any

format (e.g. SMS, MMS, or RCS) including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses and telephone numbers; the size and length of each communication; associated telephone numbers, including SMS recovery numbers; usernames and other identifiers; user settings; and all associated logs and change history;

- **YOUTUBE CONTENTS:** The contents of all media associated with the account on YouTube, whether active, deleted, or in draft, including: copies of videos and other media only if uploaded to, saved to, shared by or shared with the account; edits, comments, likes, chats, and other interactions, including associated URLs; search history; channels; subscriptions; subscribers, friends, and other contacts; playlists; connected applications; associated URLs for each record; creation and change history; privacy settings for each record; and all associated logs, including IP addresses, locations, timestamps, and device identifiers;

- **YOUTUBE WATCH HISTORY:** A record of the account's watch history, including: accessed URLs and their associated duration, privacy settings, upload timestamps, tags, IP addresses, change history, location information, and uploading account or identifier; the logs for each access by the account, including IP address, location, timestamp, and device identifier; and change history;

- **YOUTUBE SUBSCRIBER RECORDS:** All business and subscriber records associated with the account on YouTube, including birthday; name; username and other identifiers; linked accounts; alternate or recovery emails; telephone numbers, including SMS recovery numbers; physical addresses; account status; account creation date; account registration IP address; length of service; means and source of payment (including any credit or bank account number); associated devices; associated Android IDs; and associated logs and change history;

- **ADWORDS/GOOGLE ADS:** All records for advertising transactions by the account relating to Google Ads, AdWords, and DoubleClick for Advertisers, including: bid, location of advertisement (including URL), permitted advertisements, blocked advertisements, design and customization settings, and engagement records; payment transactions; user settings; and all associated logs, including IP addresses, location data, timestamps, and change history;

- **ADVERTISING SUBSCRIBER RECORDS:** All business and subscriber records associated with the account on AdSense, Google Ads, Adwords, and DoubleClick by Google, including: name; user name; physical address; alternate or recovery emails; telephone numbers, including SMS recovery numbers; linked accounts; account status; account creation date; account registration IP address; length of service; associated devices; associated AndroidIDs; means and source of payment (including any credit or bank account number); and all associated logs and change history;

- **LINKED NON-GOOGLE ACCOUNTS:** All records relating to connected applications and websites not controlled by Google, including: applications and websites connected to the account at any time; associated account identifiers; privacy settings and account access permissions; and all associated logs, including access logs using Google credentials, timestamps, IP addresses, and change history;

The Provider is hereby ordered to disclose the above information to the Government within 28 days of the issuance of this warrant.

II.  **Information to be seized by the government**

All information described above in Section I that constitutes evidence and/or instrumentalities of violations of 18 U.S.C. § 1001 (false statements within the jurisdiction of a federal agency); 18 U.S.C. § 1519 (making false records with intent to impede, obstruct or influence the proper administration of any matter within the jurisdiction of a federal agency); and 18 U.S.C. § 1343 (wire fraud), since January 1, 2017, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.  Sheriff David Clarke (including but not limited to communications with Sheriff David Clarke and his representatives, counsel, or proxies);

b.  The Sheriff David Clark for U.S. Senate (Official Draft Campaign) Super PAC;

c.  The rules and regulations promulgated by the Federal Election Commission;

d.  The rules and standards imposed by the Federal Election Campaign Act; and

e.  The finances—including but not limited to expenditures, obligations, and income—of Jack W. Daly and Nathanael K. Pendley;

f.  The identity of the person(s) who created or used the account; including records that help reveal the whereabouts of such person(s);

g.  Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

h.      Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

i.      Evidence indicating the subscriber's state of mind as it relates to the crimes under investigation, including interests and motivations; and

j.      Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.